## HILLS *v.* HOITT.

Where the question is whether a sale was fair or fraudulent, the party contesting it, having introduced evidence tending to prove it fraudulent, may introduce evidence of other frudulent transactions by the vendor, at or near the same time, to show a fraudulent intent of the vendor in the principal case.

It is competent for the adverse party to rebut such evidence, by showing that such other transactions, alleged to be fraudulent, were in fact fair and *bonâ fide.*

If he attempt to do this by showing a custom or usage of trade to transact business in that manner, he must show a custom or usage in relation to that branch of business.

The fact that a creditor, who is contesting a sale by his debtor as fraudulent, caused the vendee to be summoned as trustee of his debtor, the vendor, in the same suit in which he had attached the goods alleged to have been sold, is not evidence to show the admission or opinion of the creditor that the sale was *bonâ fide.*

TRESPASS, for taking the plaintiff's goods in Dover, December 31, 1845.

It was admitted that prior to September 20, 1845, the goods in question were the property of E. W. Hills, who lived in Portsmouth, and the plaintiff, who is his nephew, managed business for him in Dover up to that time, and claimed the goods under an alleged sale by Hills to him, of that date.

Among other and more direct testimony to show the sale fraudulent as to creditors, the defendant, who, as a sheriff, had attached the goods on a writ against E. W. Hills, dated September 26, 1845, introduced evidence that E. W. Hills had failed about the time of the sale to the plaintiff; that a short time before his failure he purchased goods in Boston, and after removing them to Portsmouth sent them to New-York, to be sold for his benefit by his brother there.

To rebut this the plaintiff called a witness, and asked him, "Is it not a common thing for traders in the country,

in Massachusetts and New-Hampshire, to buy a quantity of bonnets of the manufacturers, and send them to their agents or correspondents in New-York for sale?" The defendant objected to the question, but the court allowed it, and the witness answered in the affirmative.

The plaintiff, in order to show the opinion of the defendant, and that he had reason to believe that the goods were sold *bonâ fide* to the plaintiff, was permitted to read the officer's return on the writ upon which the goods were attached, showing that the writ was against the plaintiff as trustee, and that the plaintiff had been summoned as trustee before the attachment was made. The defendant objected to the admission of this evidence; and the jury, having returned a verdict for the plaintiff, he moved for a new trial.

*Christie,* for the plaintiff.

*Bartlett & Emery,* for the defendant, cited 10 N. H. Rep. 240, *Clark* v. *Morse;* 9 N. H. Rep. 544, *Page* v. *Thompson;* 5 C. & P. 501, *Thompson* v. *Morley;* 6 C. & P. 180, *Smith* v. *Wilkinson;* 10 Mass. 26, *Homer* v. *Dow.*

PARKER, C. J. The relevancy of the evidence, that other persons purchased and sent bonnets to New-York for sale, appears to depend upon the precise nature and character of the evidence offered on the other side to show fraud. This is not sufficiently stated in the case. The case finds that E. W. Hills purchased goods in Boston, and after removing them to Portsmouth sent them to New-York, to be sold by his brother there. This transaction took place near the time of the alleged sale of the goods in question in this case, by E. W. Hills to the plaintiff, and the evidence was introduced for the purpose of showing a fraudulent intent on the part of E. W. Hills in the sale to the plaintiff.

Hills v. Hoitt.

Where the question is whether a sale was fair or fraudulent, the party contesting it, having introduced evidence tending to prove it fraudulent, may introduce evidence of other fraudulent transactions by the vendor, at or near the same time, as having a legitimate tendency to show a fraudulent intent of the vendor in the principal case; but he must show also that the grantee, in the conveyance which he is contesting, had knowledge of the fraudulent intent of the vendor, and that his purchase was made in aid of such fraudulent intent. 13 N. H. Rep. 267, *Blake* v. *White*.

There is no direct evidence to show that the plaintiff had knowledge of the purchase of the goods in Boston, by E. W. Hills, which were transported to Portsmouth, and afterwards sent to New-York for sale. But, to rebut the evidence of that purchase and disposition, so far as it had a tendency to show an intent of E. W. Hills to defraud his creditors, which it was competent for the plaintiff to do, the plaintiff attempted to show that the transaction ought not to be regarded as evincing a fraudulent intent, by the introduction of evidence that it was a common thing for traders in the country to buy a quantity of bonnets from the manufacturers, and send them to New-York for sale. But this has no bearing to show the purchase and subsequent transactions by E. W. Hills to be fair and *bonâ fide* within the custom of such country traders, for there is nothing to show that his purchase was of bonnets, or of any thing having any connection with bonnets.

If the evidence on the part of the defendant was that E. W. Hills, about the time he conveyed the goods in the store in Dover to the plaintiff, purchased hardware and groceries in Boston on credit, and, immediately after having the goods transported to Portsmouth, sent them to New-York for sale, by his brother there, which might have some tendency to show an intention to defraud creditors,

and coupled with his sale to the plaintiff on credit, and his failure about the same time, be sufficient to show a fraudulent intent on his part, it would certainly have no tendency to show that E. W. Hills' purchase and subsequent proceedings were fair, and to rebut the inference of a fraudulent intent on his part, to prove that other traders purchased bonnets of the manufacturers, and sent them to New-York for sale. The two branches of trade, having no connection with each other, a custom or usage in relation to one would have no tendency to explain transactions, otherwise suspicious, in relation to the other.

Unless, therefore, the goods shown to have been purchased by E. W. Hills were bonnets, the evidence respecting the purchase and sale of bonnets was clearly inadmisble. If Hills' purchase was of bonnets, the question how far the evidence would serve to explain the proceedings of Hills,— his goods having been first sent to Portsmouth,— might be for the jury.

The fact that the writ served by the defendant, upon which the goods were attached, was issued against the plaintiff as trustee, and that he was summoned as such, is not evidence to show an admission by the defendant, or by the attaching creditor, that the sale was *bonâ fide.* It has no significance, either way. It shows that the creditor was desirous of obtaining security, whether the sale was fair or fraudulent. If fraudulent, by holding the goods themselves, or the plaintiff as trustee, by reason of his possession of them. But in case of failure to show the sale fraudulent, then by holding the plaintiff as trustee, by reason of his indebtedness for these goods, if that might be done. This evidence, therefore, has no tendency to prove the admission or opinion which was the purpose of its introduction.

There must be a　　　　　　　　　　　*New trial.*